**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID G. LAFEVER,<br><br>  Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHLL,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>  Defendant. | Civil Action No. 16-5071 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court upon the appeal of David G. Lafever ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Theresa Merrill that Plaintiff was not disabled from the period of August 8, 2010 through December 23, 2012.[1] The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). The Court has reviewed the parties' submissions (ECF Nos. 12, 15), and for the reasons stated below, the Court remands this matter back to the ALJ for further action in accordance with this Opinion.

**I.  BACKGROUND[2]**

The Court writes for the parties who are familiar with the facts and procedural history of the case. The Court therefore specifically addresses, in the discussion below, only those facts relevant to the issues raised on appeal.

---

[1] The ALJ found Plaintiff to be disabled as of December 24, 2012. However, Plaintiff argues that he was disabled, and therefore entitled to benefits, as of August 8, 2010.
[2] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 6.

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (internal quotations omitted). Additionally, under the Social Security Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for [her] decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec*, 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to

2

weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

## III.   THE FIVE STEP PROCESS AND THE ALJ'S DECISION

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

3

> In <u>step three</u>, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> <u>Step four</u> requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the <u>final step</u>. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112 (3d Cir. 2000) (formatting and emphasis added). "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes*, 228 F.3d at 263 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

In this case, the ALJ engaged in the above five step sequential evaluation and found: (Step 1) that Plaintiff "has not engaged in substantial gainful activity since the alleged onset date" (R. at 31); (Step 2) that Plaintiff suffers from the following severe impairments: ankylosing spondylitis; affective disorder; anxiety disorder, and; substance addiction disorder (id. at 32); (Step 3) that since the alleged disability onset date, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (id.); (RFC) that, since the alleged onset date of August 8, 2010, Plaintiff had the RFC to perform light work which may require him to stand for up to four hours in an eight-hour day (id.); (Step 4) that

since the alleged onset date, Plaintiff "has been unable to perform any past relevant work" (id. at 36). Finally, at step five, after hearing the testimony of a vocational expert ("VE"), the ALJ concluded that "[p]rior to December 24, 2012, the date the claimant's age category administratively changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.*). At step five, the ALJ heard testimony of a vocational expert ("VE"). (Id. at 37).

## IV. DISCUSSION

### A. The ALJ's Inconsistent RFC Application

Plaintiff argues that the ALJ erroneously based her finding that Plaintiff was not disabled as of August 8, 2010 on an improper application of the tables promulgated by administrative rule-making ("the grids"). (ECF No. 12, "Pls.' Br." at 15). Specifically, Plaintiff contends that, because Plaintiff has non-exertional limitations, the ALJ's reliance on the grids was improper. (Id.). Additionally, Plaintiff argues that the ALJ's reliance on the testimony of the VE was misguided because the ALJ presented the VE with an RFC of "light" work despite the ALJ's conclusions in the decision that Plaintiff had a "sedentary" RFC. The Court agrees with Plaintiff that the ALJ's application of the grids and use of the VE testimony was problematic, for the reasons discussed below.

"Where the limitations imposed by a claimant's impairments and related symptoms affect the ability to meet both the strength demands and non-strength demands of jobs, the grids will *not* apply to direct a conclusion as to disability, but will be used solely as a framework to guide the disability decision." *Hall v. Comm'r of Soc. Sec.,* 218 F. App'x 212, 216 (3d Cir. 2007) (citing 20 C.F.R. § 404.1569a(d)). This is the case because the "regulations do not purport to establish jobs that exist in the national economy at the various functional levels when a claimant has a

5

nonexertional impairment . . . ." *Sykes*, 228 F.3d at 269. Therefore, if a claimant suffers from both exertional and non-exertional impairments, an ALJ may only use the grids as a "framework" to guide her decision. However, if the ALJ uses the grids as a framework, then the ALJ must also consider "the testimony of a vocational expert or other similar evidence" reflecting on the impact of a claimant's non-exertional impairments on the availability of jobs that a claimant is capable of performing. *Id.* at 273; *see also* AR01-1(3) (2001 WL 65745) (SSA) (adopting the *Sykes* holding).

In this case, the ALJ relied on Medical-Vocation Rule 201.21 as a "framework" for her finding that Plaintiff was not disabled as of August 8, 2010. (R. at 37). Rule 201.21 applies to an RFC of "maximum sustained work capability limited to sedentary work." However, because Plaintiff suffered from severe non-exertional impairments, the ALJ was not permitted to rely exclusively on the grids. Thus, in her decision, the ALJ purports to rely on the testimony of a VE in rendering her determination. (Id.).

However, as Plaintiff notes, the ALJ's reliance on the VE's testimony in support of her finding of non-disability is problematic. Specifically, the ALJ inconsistently applies various RFC determinations throughout her discussion. On the one hand, at step four of the analysis, the ALJ assigned Plaintiff an RFC of "light work" with the ability to "stand up to four out of eight-hours a day." (Id. at 32). Additionally, the ALJ notes that the hypotheticals posed to the VE presumed a "light" RFC. Yet, on the other hand, the ALJ relied upon Medical-Vocational Rule 201.21 as a "framework" for determining Plaintiff's RFC, notwithstanding the fact that that Rule 201.21 is applicable to a "sedentary" RFC. (Id. at 37).

The ALJ recognized this inconsistency. That is, the ALJ states that the RFC "assessment was given as light and the [VE] gave light other jobs. However, given the standing limitation I

deem the RFC to be sedentary and even if sedentary, the claimant would not be disabled under Medical Vocational Rule 201.21 prior to December 24, 2012." (Id.).

The ALJ's conclusion does not withstand scrutiny. First, as noted above, an ALJ may not use the grids as a framework without also relying on some authority that speaks to the impact of a claimant's non-exertional impairments on a claimant's ability to perform certain jobs in the national economy. Here, although the ALJ cited to the VE's testimony, the ALJ's purported reliance on that testimony to substantiate her finding is not meaningful, because the VE's findings were premised upon a different RFC than the ALJ now considers applicable. In other words, in the absence of any meaningful testimony from the VE, the ALJ's finding that the claimant was "not disabled under [the grids]" runs counter to the law as stated in *Sykes*. 228 F.3d at 270 ("[T]he practice of the ALJ determining without taking additional evidence the effect of the nonexertional impairment on residual functional capacity cannot stand."). Accordingly, the ALJ's use of Medical-Vocational Rule 201.21 was improper.

Moreover, the ALJ's mid-decision change in the Plaintiff's RFC from "light" to "sedentary" calls into question the accuracy or reliability of the VE's testimony in the first place. As the regulations recognize, the RFC used in the fourth step is the same used in the fifth step of the sequential evaluation process. 20 CFR § 404.1520(e). "[T]he vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments. Thus the expert must have evaluated claimant's particular impairments as contained in the record." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). To the extent that the ALJ now finds that the RFC proffered to the VE was inaccurate, this error may render the VE's conclusions inaccurate. Given these discrepancies, the Court cannot

meaningfully review the ALJ's use of the grids in conjunction with the testimony of the VE. The Court, therefore, will remand this matter to the ALJ to clarify these issues.

### B. The ALJ's Step Three Findings

Plaintiff also argues that the ALJ erred in her step three analysis. (Pls.' Br. at 22-28). In particular, Plaintiff maintains that the ALJ failed to consider each of Plaintiff's impairments in combination when determining whether those impairments met or equaled a listed impairment. (Id.).

"In step three, the ALJ must determine whether [the claimant's] impairment matches, or is equivalent to, one of the listed impairments. If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary." *Burnett*, 220 F.3d at 119. If a claimant has "a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3))," the ALJ will consider whether the "combination of impairments is medically equivalent to [a] listing." 20 CFR § 404.1526(b)(3).

In this case, the ALJ found, at step two, that Plaintiff suffered from the following four severe impairments: ankylosing spondylitis; affective disorder; anxiety disorder; and substance addiction disorder. (R. at 32). Notwithstanding the fact that the ALJ found Plaintiff to have four severe impairments, the ALJ's decision does not properly consider whether these impairments, or the combination of these impairments, meet or medically equal the applicable listings. The entirety of the ALJ's step three analysis states as follows:

> No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show signs or findings that are the same or equivalent to those of a listed impairment. Particular scrutiny was given to the claimant's condition in light of Listing Sections 14.09 and 12.00. Thre [sic] is no indication of spinal fixation at 45 degrees or more of flexion or fixation of 30 degrees and involvement of another body organ.

> The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listing in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.
>
> The claimant's mental impairment(s) does not satisfy the paragraph "C" criteria of the applicable mental disorder listing(s).

(Id.). Although the ALJ referenced Listing Section 14.09, the ALJ only considered one of the several subsections of 14.09 that would give rise to a finding of disability. To the extent the ALJ did consider the other subsections, the ALJ failed to note those considerations in the decision. With respect to Plaintiff's mental impairments, the ALJ determined that Plaintiff suffered various degrees of limitations with respect to the paragraph "B" criteria applicable to mental impairments and that Plaintiff's "mental impairment(s) does not satisfy the paragraph 'C' criteria of the applicable mental disorder listing(s)." However, the ALJ failed to consider any of Plaintiff's impairments in combination. In the absence of a more thorough discussion of how the ALJ came to the conclusion that Plaintiff's impairments do not meet or medically equal a listed impairment, this Court cannot meaningfully review the ALJ's findings.

Accordingly, the Court will remand this matter back to the ALJ to fully "explain h[er] findings at step three, including an analysis of whether and why [the claimant's disability and other severe impairments] in combination, are or are not equivalent in severity to one of the listed impairments." *Torres v. Comm'r of Soc. Sec.*, 279 Fed. App'x. 149, 151 (3d Cir. 2008); *see also Miller v. Astrue*, No. 11-7094, 2013 WL 3043460, *8–9 (D.N.J. June 14, 2013) (holding that the ALJ erred in failing to set forth an analysis of the claimant's diabetes in conjunction with the claimant's other severe impairments, and as a result the district court "cannot provide a meaningful judicial review of [the ALJ's] findings").

## V.   CONCLUSION

For the foregoing reasons, the Court remands the matter for further proceedings consistent with this Opinion.  An appropriate Order follows this Opinion.

DATED: July ____, 2017

_____
JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT